UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDDIE GAINES,

                    Petitioner,

          -vs-                                    **No. 03-CV-0016(RJA)(VEB)**
                                                  **REPORT AND RECOMMENDATION**

TIMOTHY J. MURRAY, Superintendent of
Attica Correctional Facility,

                    Respondent.

_____

## I.      Preliminary Statement and Jurisdiction

        *Pro se* petitioner Eddie Gaines has filed a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254. *See* Docket No. 1. This matter has been referred to the undersigned for the

issuance of a report and recommendation regarding the disposition of Gaines' petition, in which

he challenges his conviction on July 7, 1999, pursuant to a guilty plea, to two counts of second

degree forgery, a class D felony. At the time Gaines filed the instant petition in 2003, he was

incarcerated pursuant to the 5-to-10-year sentence imposed for the 1999 conviction that he is

challenging in the petition. On February 7, 2008, respondent informed the Court that Gaines was

released to parole supervision, but has been subsequently incarcerated on charges of fourth

degree grand larceny. *See* Docket No. 8.

        I note, as an initial matter, that there is no jurisdictional barrier to this Court considering

Gaines' habeas petition. Although Gaines was released from custody to parole during the

pendency of this petition, he was incarcerated by reason of the conviction he challenges at the

time the petition was filed, which is all the "in custody" provision of 28 U.S.C. § 2254 requires.

*See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citing *Carafas v. LaVallee*, 391 U.S. 234, 238

(1968); *Maleng v. Cook*, 490 U.S. 488, 490-491(1989) (*per curiam*). Furthermore, the fact that

Gaines was released to parole supervision did not moot his habeas petition since controlling

Supreme Court precedent presumes that "collateral consequences" adequate to meet Article III's

injury-in-fact requirement  generally flow from a felony conviction, such as that challenged by

Gaines here. *See Sibron v. New York*, 392 U.S. 40, 55-56 (1968); *see also Spencer*, 523 U.S. at 8

(citing *Carafas*, 391 U.S. at 237-238)).

Although Gaines' petition is not moot, the Court believes that habeas relief is not

warranted on any of the claims raised herein. Accordingly, for the reasons that follow, the Court

recommends that the petition be dismissed in its entirety.

## II.      Factual Background and Procedural History

The Ontario County District Attorney's office accused Gaines and an accomplice of

using credit cards stolen from one Kathleen O'Neil to make purchases at several department

stores at Eastview Mall in the Town of Victor, New York. In addition, Gaines possessed other

items of personal property stolen from O'Neil. A grand jury returned an seven-count indictment

against Gaines; the top charges were two counts of forgery in the second degree (New York

Penal Law ("P.L.") § 107.10(1)), a class D felony. Gaines was arraigned on February 3, 1999.

On June 16, 1999, Gaines' assigned counsel asked to be relieved from his representation

of Gaines because he was about to join the Ontario County District Attorney's office. The trial

court granted the request and assigned new counsel. The prosecutor subsequently offered Gaines

the opportunity to plead guilty to both forgery counts and receive a sentence of 2½ to 5 years on

each count, with the sentences to run consecutively. To the further benefit of Gaines, the

prosecutor agreed to sentence him as a second felony offender, rather than as a persistent felony

offender. With the advice of counsel, Gaines accepted the plea bargain and entered a guilty plea on July 7, 1999, and received the sentence he had been promised.

Gaines then appealed his conviction, arguing that the trial court should have assigned a "special prosecutor" once it became known that Gaines' first assigned counsel was joining the district attorney's office. The Appellate Division agreed and remanded the case to Ontario County Court. *People v. Gaines*, 277 A.D.2d 900 (App. Div. 4th Dept. 2000). The same judge presided over the remand proceedings.

A different grand jury re-indicted Gaines on the same seven charges, and the trial court assigned a special prosecutor. Represented by new counsel, Gaines appeared before the court on March 26, 2001, and the special prosecutor made the same plea offer that had been extended before. Defense counsel moved to withdraw, but the trial court denied the motion. At that point, Gaines accepted the plea offer and pled guilty to the same charges to which he had pled on July 7, 1999.

He was sentenced on April 25, 2001, as he had been previously–to 2½ to 5 years on each forgery count, with the sentences set to run consecutively. At the sentencing hearing, defense counsel handed up to the trial judge a letter written by Gaines and asked that it be made part of the record. In the letter, Gains argued that his sentences should not run consecutively, that the trial judge should have recused himself, and that Gaines' second assigned counsel should have been allowed to withdraw.

Gaines then appealed this conviction in January 2002, and moved pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 to vacate the judgment. Gaines requested that the trial judge recuse himself from the C.P.L. § 440.10 motion but the judge declined and

subsequently denied the motion in April 2002. Leave to appeal the denial of the § 440.10 motion was denied.

On July 3, 2002, the Appellate Division affirmed Gaines' conviction. *People v. Gaines*, 296 A.D.2d 862, 744 N.Y.S.2d 748 (App. Div. 4th Dept. 2002). Leave to appeal to the New York Court of Appeals was denied on November 7, 2002. *People v. Gaines*, 99 N.Y.2d 535 (N.Y. 2002).

This habeas petition followed in which Gaines raises the following six grounds for relief: (1) the trial court coerced petitioner into pleading guilty; (2) trial counsel was ineffective; (3) appellate counsel was ineffective; (4) petitioner was denied due process and his Sixth Amendment right to be present when trial counsel participated in a sidebar conference with the judge and prosecutor outside of petitioner's presence; (5) the trial judge erroneously refused to recuse himself; and (6) the plea allocution was insufficient as a matter of law because it imputed accomplice liability to petitioner without any factual basis for doing so. Respondent has opposed the petition both on procedural grounds and on the merits. *See* Respondent's Memorandum of Law ("Resp't Mem.") at 3 *et seq*. (Docket no. 5). In particular, respondent notes that a voluntary guilty plea precludes Gaines from attacking any non-jurisdictional defects in his conviction on habeas review. *See id.* at 6 (Docket No. 5) (citing *United States ex rel. Williams v. Follette*, 408 F.2d 658 (2d Cir. 1969) ("[W]hile a voluntary guilty plea constitutes a waiver of all non-jurisdictional defects, a conviction based on a guilty plea is open to collateral attack if the petitioner can show that the plea was not in fact voluntary."), *reversed on other grounds*, *McMann v. Richardson*, 397 U.S. 759 (1970). Respondent argues that if Gaines' guilty plea was voluntary, he should be deemed to have waived all of his other claims and the petition and the

-4-

petition. *See id.* (Docket No. 5). Respondent contends that all of Gaines' claims are, in any event, without merit.

For the reasons that follow, I recommend agreeing with respondent that Gaines' guilty plea was voluntary, thereby effectively precluding collateral review of his remaining claims of federal habeas, to the extent that those claims assert non-jurisdictional errors. Furthermore, I recommend finding that none of Gaines' claims has merit.

## III.    Standard of Review

The April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. A federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005). A state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court's decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it. *Williams*, 529 U.S. at 413.

*See also Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007). "Objectively unreasonable" in this context means "'some increment of incorrectness beyond error is required' in order to grant a federal habeas application." *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quoting *Matter of Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir.2000)). Additionally, under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct and the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *see also DeBerry*, 403 F.3d at 66.

## IV.   Analysis of the Petition

### A.   Voluntariness of Petitioner's Guilty Plea

Gaines contends that his plea was involuntary, "having been obtained by coercion." *See* Petition, ¶12(A) (Docket No. 1). In addition, Gaines argues, the trial court erred in denying his C.P.L. § 440.10 motion, which asserted this claim, without first holding a hearing. *See id.* Gaines' only factual allegation in support of this claim concerns a letter his trial counsel allegedly wrote to him, in which the attorney indicated that the trial judge stated off-the-record that he would sentence petitioner as a persistent felony offender if petitioner were convicted after trial.[1] In support of his contention that the trial court made improperly coercive statements, Gaines offers a letter purporting to be from his trial attorney. *See* Respondent's Exhibit ("Resp't

---

[1]       Under New York's Penal Law, a second felony offender is defined as a person who stands convicted of a felony, having previously been convicted of a predicate felony. N.Y. PENAL LAW § 70.06(1)(a). Usually, a class D felony such as forgery in the second degree carries a maximum sentence of 7 years and a minimum of no less than 1 year and no more than 2⅓ years. *Id.*, § 70.00(2)(d), (3)(b). A second felony offender's sentence may be enhanced so that the maximum term is not less than 4 and not more than 7 years, and the minimum is not less than half of the maximum term. *Id.*, §§ 70.06(3)(d), (4)(b). In contrast, a persistent felony offender, one who stands convicted of a felony after having been convicted of *two* predicate felonies, may be sentenced to 15 years to life on a class D felony. *Id.*, §§ 70.10(1), (2); 70.00(2)(a), (3)(a)(i). Given Gaines' lengthy criminal record, which included the requisite two predicate felonies for persistent felony offender status, the sentence he received under the plea deal was generous.

Ex.") L.[2] Gaines submitted the letter in support of his C.P.L. § 440.10 motion. In it, defense

counsel stated,

> As I have tried to explain, Judge Harvey is looking for a reason to sentence you
> more harshly. He has already indicated (off the record) that he will sentence you
> as a persistent felony offender if you are convicted after trial. While the judge's
> actions are wrong, he has been careful not to put his intentions on the record.

Resp't Mem. at 8 (quoting Respondent's Exhibit ("Resp't Ex."). L, attached to Respondent's

Answer ("Resp't Ans.").  Gaines concedes that this letter, which is unsworn, hearsay-upon-

hearsay, was not part of the record below. *Id.* (citing Petition, ¶12(E)). Even if it were part of the

record, the letter is insufficient to entitle petitioner to an evidentiary hearing in this Court. *See*

*United States ex rel. Mascia v. Zelker*, 450 F.2d 166, 169 (2d Cir. 1971) ("Mascia's trial attorney

testified at a hearing on Mascia's motion to withdraw the guilty plea that he had expressed to

Mascia his own opinion that the trial judge thought the case looked bad for Mascia. The attorney

flatly denied that the judge had ever made any such statement to him. Mascia did not testify at

that hearing, and has never adduced any evidence to substantiate his bald claim.").

As a preliminary matter, the Court notes that under New York law, "state court judges

are not prohibited from engaging in plea negotiations." *Williams v. Lacy*, 96 Civ. 0868, 1997 WL

40922 at *2 (S.D.N.Y. Jan. 31, 1997), *aff'd mem.*, No. 97-2572, 152 F.3d 922, 1998 WL 352965

(2d Cir. May 7, 1998); *accord McMahon v. Hodges*, 225 F. Supp.2d 357, 369 (S.D.N.Y. 2002)

("In New York, state court judges do participate in plea discussions."); *Schaffner v. Greco*, 458

F. Supp. 202, 206 (S.D.N.Y.1978) ("New York law permits participation by the judge in plea

negotiations . . .") (collecting 2d Cir. cases); *see also Thomas v. Kuhlman*, No. 99-CV-3737,

---

[2]     Respondent's Exhibits have been submitted in connection with his answer to the petition (Docket
No. 4).

2003 WL 21294065 at *7 (E.D.N.Y. Apr. 8, 2003) (stating that plea bargaining systems that permit judicial involvement are not constitutionally impermissible.). Thus, Judge Harvey's participation in the plea discussions is not an issue; the issue is whether his statements improperly coerced Gaines into pleading guilty.

Because the Court must judge the voluntariness of Gaines' plea by federal constitutional standards,[3] it need not determine whether Judge Harvey's alleged off-the-record comments would render the plea involuntary as a matter of New York state law. *Gomez v. Duncan*, No. 02 Civ. 0846 LAP AJP, 2004 WL 119360, at *22 (S.D.N.Y. Jan. 27, 2004) (report and recommendation). As a matter of New York law, "a court wrongly burdens the defendant's exercise of his right to trial when it indicates he will receive the maximum sentence, or maximum consecutive sentences, after trial, but a significantly lighter sentence after a plea." *People v. Stevens*, 298 A.D.2d 267, 268, 748 N.Y.S.2d 589, 590-91 (App. Div. 1st Dept. 2002) (quotation omitted); *see also*, *e.g.*, *People v. Christian*, 139 A.D.2d 896, 896, 527 N.Y.S.2d 1020, 1020 (App. Div. 4th Dept.) ("A defendant may not be induced to plead guilty by the threat of a heavier sentence if he decides to proceed to trial. . . . 'To capitulate and enter a plea under a threat of an 'or else' can hardly be regarded as the result of the voluntary bargaining process between the defendant and the People sanctioned by propriety and practice.'"), *appeal denied*, 71 N.Y .2d 1024, 530 N.Y.S.2d 559 (N.Y. 1988). "New York courts distinguish between a trial

---

[3]         Constitutional due process requires that a guilty plea be voluntary, knowing and intelligent. *E.g.*, *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-43 & n. 5 (1969); *accord*, *e.g.*, *United States v. Ruiz*, 536 U.S. 622, 629  (2002). Determining the validity of a defendant's guilty plea requires the reviewing court to ask "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir.1992); *see also Hill v. Lockhart*, 474 U.S. 52, 55 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Machibroda v. United States*, 368 U.S. 487, 493 (1962)).

judge 'impart[ing] a reasonable assessment of the sentencing prospects in the event of a conviction,' which is permissible, and 'unequivocally stat[ing] that upon a conviction, the maximum sentence would be imposed,' which is coercive." *Gomez v. Duncan*, 2004 WL 119360, at *22 (quoting *People v. Stevens*, 298 A.D.2d at 268, 748 N.Y.S.2d at 590) (footnote omitted). Similarly, the Second Circuit has explained that a judge's threat of a more severe sentence should a defendant go to trial, "[i]f true, would establish a *per se* violation of the defendant's Sixth Amendment right to a trial, and require resentencing before a different judge." *Fielding v. LeFevre*, 548 F.2d at 1106. However, a judge's statements strongly implying that sentencing will be harsher should the defendant present his case at a trial are not necessarily coercive. *See United States ex rel. McGrath v. LaVallee*, 348 F2d 373 (2d Cir. 1965) (finding that trial judge's statement to defendant that if he were tried and convicted, could be imprisoned for the rest of his life, while a guilty plea might give him a chance to serve a shorter sentence, was not coercive); *Mauro v. Walker*, No. 95-2181, 99 F.3d 402, 1995 WL 760393, at *1 (2d Cir. Dec. 26, 1995) (unpublished opn.) (finding that it was not coercive for trial judge to state that he had previously imposed longer sentences on other defendants).

Every defendant involved in plea negotiations suffers the threat of conviction (often of greater charges or with a greater penalty), and must face such "difficult choices." *E.g.*, *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973) (noting possibility that if defendant "exercises his right to plead innocent and to demand a jury trial, he will receive a higher sentence than would have followed a waiver of those rights and stating that "[a]lthough every such circumstance has a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices was upheld [by

the Supreme Court] as an inevitable attribute of any legitimate system which tolerates and

encourages the negotiation of pleas")); *Brady v. United States*, 397 U.S. 742, 751-52 (1970)

(guilty plea constitutionally valid even though "motivated by defendant's desire to accept the

certainty or probability of a lesser penalty rather than face a wider range of possibilities

extending from acquittal to conviction and a higher penalty authorized by law for the crime

charged"). *Accord, e.g.*, *United States v. Cruz*, 156 F.3d 366, 374 (2d Cir.1998).

Thus, respondent is correct that a trial court's participation in plea discussions is not

inherently coercive, even if the judge informs the defendant of the various consequences of the

options available to him. Resp't Mem. at 7 (Docket No. 5) (citing *Bullock v. Warden*, 408 F.2d

1326 (2d Cir. 1969)). Furthermore, respondent asserts, "there is no constitutional infirmity in

sentencing a defendant more harshly after a trial than upon a plea[.]" *Id.* (Docket No. 5) (citing

*United States v. Bennett*, 252 F.3d 559, 563 n.5 (2d Cir. 2001) (quoting *United States v. Cruz*,

977 F.2d 732, 734 (2d Cir. 1992)). As the Second Circuit has explained, "the lower sentence

after a guilty plea reflects a 'reduction from a sentencing norm ascertained independent of the

procedure by which guilt is ascertained. A sentence imposed upon a defendant who stands trial is

that norm; it is not an enhancement above the norm as a cost of standing trial.'" *Bennett*, 252

F.3d at 563 n.5 (quoting *Cruz*, 977 F.2d at 734). Moreover, "[t]he lawfulness of a discount for

pleading guilty is well settled." *Id.* (citing *Corbitt v. New Jersey*, 439 U.S. 212, 219 (1978);

*Brady v. United States*, 397 U.S. at 750-51; *Cruz*, 977 F.2d at 733-34; *United States v. Parker*,

903 F.2d 91, 105 (2d Cir. 1990)).  The Supreme Court explained in *Corbitt* that "not every

burden on the exercise of a constitutional right, and not every pressure or encouragement to

waive such a right, is invalid," 439 U.S. at 219, and, in particular, " there is no *per se* rule against

encouraging guilty pleas," *id*. To the contrary, the Supreme Court has "squarely held that a State

may encourage a guilty plea by offering substantial benefits in return for the plea[,]" *id.*, such as

"'the possibility or certainty . . . [not only of] a lesser penalty than the sentence that could be

imposed after a trial and a verdict of guilty . . .,'" *id.* at 220 (quoting *Brady v. United States*, 397

U.S. at 751) (alteration and ellipses in original), "but also of a lesser penalty than that required to

be imposed after a guilty verdict by a jury[,]" *id.* (citation omitted). Thus, "'[w]hile confronting a

defendant with the risk of more severe punishment clearly may have a "discouraging effect on

the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an

inevitable"–and permissible–"attribute of any legitimate system which tolerates and encourages

the negotiation of pleas."'" *Id.* at 221 (quoting *Chaffin v. Stynchcombe*, 412 U.S. at 31 (alteration

in original)). *See also Fielding v. LeFevre*, 548 F.2d 1102 (2d Cir. 1977) ("[A]n offer of leniency

should a guilty plea be entered, . . . violates no constitutional rights, *Santobello v. New York*, 404

U.S. at 260-62 . . . ; in fact, this is an accepted part of New York's criminal procedure, *United*

*States ex rel. Selikoff v. Com. of Corr.*, 524 F.2d 650 (2d Cir. 1975); *People v. Nalo*, 47 A.D.2d

613, 365 N.Y.S.2d 2 (1975).").

I agree with respondent that even were I to take Gaines' allegations at face value, he has

not established that his freedom of decision was impermissibly affected by the trial judge's

alleged off-the-record statements regarding his intention to sentence Gaines as a persistent felony

offender rather than a second felony offender. *See Williams v. Lacy*, 1997 WL 40922, at *2 ("In

telling [petitioner] that he could be sentenced as a persistent felony offender if convicted after a

trial [rather than as a second violent felony offender under the plea agreement], [the trial judge]

was not vindictively threatening petitioner with an enhanced penalty, but merely informing him

of one of the benefits of the proposed plea bargain."); *Oyague v. Artuz*, 274 F. Supp.2d 251, 258

(E.D.N.Y. 2003) (holding that guilty plea not coerced where petitioner alleged that in an

off-the-record conversation, the trial court told petitioner that if he was convicted after trial "he

would spend the rest of his life in prison because he would be facing a likely 65 years to life

sentence. Assuming the conversation took place, there is no allegation that the trial court did not

believe that its statements were accurate or that the court was motivated by anything but a desire

to fully inform petitioner of the consequences of going to trial."); *Phan v. McCoy*, No.

94-CV-1596, 1997 WL 570690 at *6 (N.D.N.Y. Aug. 28, 1997) (Pooler, D .J.) (Where petitioner

claimed his guilty plea "was involuntary because withdrawal of that plea would have required

him to face the possibility of conviction and sentencing for as many as one hundred and thirty

offenses," claim rejected because the only coercion petitioner alleged was from "the inherent

risks of going to trial."); *McGrath*, 348 F.2d at 376; *LaFay v. Fritz*, 455 F.2d 197 (2d Cir. 1972).

  Furthermore, Gaines was not a "novice" at entering guilty pleas. As respondent notes,

Gaines had quite an extensive history of criminal convictions, all of which were obtained by

means of guilty plea. Gaines' sworn statements to the trial court at the time of the plea, combined

with his considerable experience in dealing with the criminal justice system, do not provide a

basis for concluding that Gaines' decision was anything other than knowing, intelligent, and

voluntary. *See Mask v. McGinnis*, 252 F.3d 85 (2d Cir. 2001); *Williams v. Meachum*, 948 F.2d

863 (2d Cir. 1991); *Richardson v. McMann*, 408 F.2d 48, 52 (2d Cir. 1969); *France v. Strack*,

No. 99-CV-2510, 2001 WL 135744 at *3 (E.D.N.Y. Jan. 30, 2001) ("Pleading guilty to avoid a

more severe sentence does not in itself qualify as involuntary because the plea can nonetheless

be the 'product of a free and rational choice, especially where the defendant was represented by

-12-

competent counsel whose advice was that the plea would be to the defendant's advantage." ').

Here, Gaines received the same plea offer when his case was remanded for presentation by a special prosecutor, and made the decision to accept it based upon his second attorney's advice. In the letter from his attorney, referred to above, the attorney advised as follows: "To be clear, from my review of the evidence, except for the tape, it seems to me that your chance of success at trial is not very good . . . . In any event, the risk of life sentence [sic] is too severe for me to recommend anything other than entering a plea to the charges." Resp't Mem. at 9 (Docket No. 5) (quoting Resp't Ex. L, Letter attached as Exhibit to Petitioner's C.P.L. § 440.10 Motion). Then, at the second plea colloquy, Gaines stated under oath that no one had made him any promises in order to induce him to plead guilty. *See* Resp't Ex. G. Federal courts have consistently observed that a defendant's statements made under oath at a plea allocution "carry a strong presumption of verity . . .  and are generally treated as conclusive in the face of the defendant's later attempt to contradict them," *Adames v. United States*, 171 F .3d 728, 732-33 (2d Cir.1999) (citations and quotations omitted). *See also United States v. Torres*, 129 F.3d 710, 715 (2d Cir.1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea."); *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). This Court may credit Gaines' statements at the plea allocution–that his guilty plea was voluntary–over his later allegations of coercion.

For the foregoing reasons, I recommend denying Gaines' first ground for relief alleging that his guilty plea was involuntary.

### B.     Ineffective assistance of trial counsel

Gaines contends that his second trial counsel, who unsuccessfully moved to be relieved

as counsel prior to the second guilty plea, "abdicated his role as an advocate by failing to confront the Judge, on the record," regarding the issue of the judge's alleged threat to sentence petitioner more harshly if he were to be convicted after trial. According to petitioner, his attorney should have objected to the judge's comments and should have reported the judge to "the appropriate Judicial disciplinary body." By failing to do so, Gaines asserts, trial counsel "served as the instrument of the Judge's coercive tactics." Petition, ¶12(B) (Docket No. 1).

"*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ordinarily applies to claims of ineffective assistance of counsel at the plea hearing stage." *Wright v. VanPatten*, __ U.S. __ , 128 S. Ct. 743, 746 (2008) (citing *Hill v. Lockhart*, 474 U.S. at 58 ("[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.").  In *Tollett v. Henderson*, 411 U.S. 258 (1973), the Supreme Court limited the scope of a defendant's attack on counsel's performance where the defendant has pled guilty, stating that the defendant "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Id.* at 267. That is, the defendant must show that counsel "was [not] within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). The Supreme Court explained in *Hill v. Lockhart* that

> [i]n the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, supra, and *McMann v. Richardson*, supra. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a *reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.*

-14-

474 U.S. 52, 59 (1985) (emphasis supplied). *Accord*, *e.g.*, *United States v. Couto*, 311 F.3d 179, 187 (2d Cir. 2002) ("To establish ineffective assistance of counsel in the context of a guilty plea, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial.").

Contrary to Gaines' contention, the record indicates that his attorney did ask the trial court to recuse itself based on "what has been perceived to be perhaps harsher treatment for my client on the basis that he won this appeal." Resp't Ex. G at 9. When that motion was denied, defense counsel stated that Gaines was "willing to enter a plea of guilty to the offer[,] *considering the circumstances*." *Id.* at 10 (emphasis supplied). As respondent points out, it is difficult to discern how petitioner could have benefitted had defense counsel blatantly accused the judge of coercing a plea.

Fatal to Gaines' claim is that he has failed to show "prejudice"–that is, *any* probability, let alone a reasonable one, that he would have proceeded to trial had defense counsel not committed the alleged mistakes.(cited in *Hill v. Lockhart*, 474 U.S. at 59 ("In the present case the claimed error of counsel is erroneous advice as to eligibility for parole under the sentence agreed to in the plea bargain. . . . [I]n the present case we conclude that petitioner's allegations are insufficient to satisfy the *Strickland v. Washington* requirement of 'prejudice.' Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty."). Gaines received an extremely

advantageous plea offer and sentence promise in light of his lengthy history of criminal

convictions, which included at least seven felon convictions prior to forgeries to which he pled

guilty before Judge Harvey. *See* Resp't Ex. H. On the present record, it is inconceivable to me

that Gaines would have turned down the plea offer and proceeded to trial based on odds

described, and understated, by his defense counsel as "not very good." *See Evans v. Meyer*, 742

F.2d 371, 375 (7th Cir. 1984) ("It is inconceivable to us . . . that [the defendant] would have gone

to trial on a defense of intoxication, or that if he had done so he either would have been acquitted

or, if convicted, would nevertheless have been given a shorter sentence than he actually

received"). Because Gaines has not come close to demonstrating prejudice under *Strickland*, I

recommend that this claim be dismissed. *See Hill v. Lockhart*, 474 U.S. at 59 ("Because

petitioner in this case failed to allege the kind of 'prejudice' necessary to satisfy the second half

of the *Strickland v. Washington* test, the District Court did not err in declining to hold a hearing

on petitioner's ineffective assistance of counsel claim.").

      **C.**    **Ineffective assistance of appellate counsel**

      Gaines contends that appellate counsel was ineffective because she failed to make the

following three arguments on direct appeal: the trial court erred in denying defense counsel's

motion to withdraw; the trial judge's inquiry regarding his obligation to recuse himself was

insufficient; and the trial court conducted improper sidebar conferences outside the presence of

petitioner.

      The *Strickland* test applies to the evaluation of appellate counsel. *Mayo v. Henderson*, 13

F.3d 528, 533 (2d Cir. 1994); *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992). It is not

sufficient for a defendant to allege that his appellate attorney omitted non-frivolous arguments

for an appellate attorney does not have a constitutional duty to advance every potential colorable

claim. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Where a claim is based on appellate counsel's

"failure to raise viable issues, the district court must examine the trial record to determine

whether appellate counsel failed to present significant and obvious issues on appeal." *Clark v.*

*Stinson*, 214 F.3d 315, 328 (2d Cir. 2000).

      I agree with respondent that there was no legal basis for Gaines' second assigned counsel

to withdraw from representation for the reasons that petitioner was dissatisfied with him. Gaines'

unhappiness with counsel was based on Gaines unsupported belief that counsel and the

prosecutor had been "plotting against him" during a sidebar conference. Petitioner's allegation of

a conspiracy is based only on the fact that defense counsel spoke out of the range of Gaines'

hearing, but within his sight. From this, Gaines deduced that his trial counsel was betraying him

to the court and the prosecutor and violating his Sixth Amendment right to be present at all

material stages of trial.

      The Sixth Amendment right to effective assistance of counsel "'includes a right to

conflict-free representation.'" *United States v. John Doe No. 1*, 272 f.3d 116 (122 (2dCir. 2001)

(quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000) (other quotations omitted)).

However, "[t]his right does not . . .  guarantee a 'meaningful relationship' between the defendant

and his counsel." *Id.* (quoting *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983)). The Second Circuit

has held that trial "courts must impose restraints on the right to reassignment of counsel in order

to avoid the defendant's manipulation of the right 'so as to obstruct the orderly procedure in the

courts or to interfere with the fair administration of justice.'" *Id.* (quoting *McKee v. Harris*, 649

F.2d 927, 931 (2d Cir.1981) (quoting *United States v. Calabro*, 467 F.2d 973, 986 (2d

-17-

Cir.1972)); *see also United States v. Bentvena*, 319 F.2d 916, 936 (2d Cir.1963)). As discussed elsewhere in this Report and Recommendation, Gaines has never substantiated his claim that something untoward occurred during the alleged sidebar conference which he did not attend. Thus, he has failed to provide any factual support for his claim that his trial counsel was not representing his best interests. To the contrary, it appears to this Court that the alleged conflict was merely a product of Gaines' imagination.

Finally, with regard to appellate counsel's omission of an argument that the trial judge was "too close" to the case to preside over it on remand. Gaines has offered no precedent standing for the proposition that he is entitled, as a matter of federal or state law, to having a different judge preside over a re-trial. "Adverse rulings in other litigation or the same litigation involving the party seeking recusal generally do not constitute a basis for recusal." *United States v. Arena*, 180 F.3d 380, 398 (2d Cir. 1999) (citing, *inter alia*, *Liteky v. United States*, 510 U.S. 540, 555 (1994)). As a matter of both New York state and federal law, recusal motions are committed to the discretion of the trial court, the denial of which are reviewable only for abuse of discretion. *Id.* (citations omitted). Here, I note that in its order reversing his conviction, the Fourth Department made no suggestion that the re-trial should be before a different judge. This was not a situation where "major views or findings at the trial determined to be erroneous or based on evidence that would have to be excluded on a new trial," *United States v. Wallach*, 788 F. Supp. 739, 741 (S.D.N.Y. 1992). Rather, the first proceeding ended in a plea bargain, and the reason for reversal was to have the case handled for the state by a special prosecutor, since Gaines' first trial counsel had obtained employment at the prosecuting district attorney's office during the pendency of the case.

The Court has compared the issues the Gaines contends appellate counsel should have argued with those actually asserted on appeal. It is apparent that none of the omitted claims had a greater likelihood of success on the merits than the claims appellate counsel did argue. In fact, it is this Court's opinion that there is no reasonable probability that Gaines' conviction would have been reversed a second time had counsel raised them. Therefore, Gaines is unable to demonstrate that he sustained constitutionally significant prejudice as a result of counsel's performance. I accordingly recommend that his claim of ineffective assistance of appellate counsel be dismissed.

**D.      Violation of Sixth Amendment right to be present at all material stages of trial**

Gaines contends that he was denied his due process and Sixth Amendment rights when his assigned attorney had an off-the-record conversation with the prosecutor and the trial judge. Gaines contends that he was "excluded from this conference about his plea and sentence, as if he were invisible."  Gaines cannot obtain habeas relief based on these allegations concerning a sidebar conference that alleged occurred before his guilty plea.. The Supreme Court explained in *Tollett v. Henderson* that "[t]he focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." 411 U.S. at 266.  "[W]hile claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief" where a defendant has entered a guilty plea upon the advice of counsel. *Id.* at 267. *Tollett* "reaffirm[ed] . . . the principle [that] . . . : a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Id.* Thus, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged,

he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea," but "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Id.* (Holding that petitioner's guilty plea to first-degree murder charge foreclosed independent inquiry, by way of federal habeas corpus, into merits of claim of unconstitutional racial discrimination in selection of grand jury which returned indictment, notwithstanding unchallenged affidavit of counsel who had represented petitioner in criminal proceedings stating that counsel did not know as a matter of fact that blacks were systematically excluded from grand jury service).

Moreover, the claim is without merit. Even assuming *arguendo* that Gaines was not permitted to attend the alleged sidebar conference at which defense counsel and the prosecutor were present, a defendant's Sixth Amendment right to be present is not absolute.  *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 107-08 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964); *see also Illinois v. Allen*, 397 U.S. 337, 338 (1970). A defendant has no right to be present during a portion of a criminal proceeding when his presence at the hearing would be of only marginal to no assistance. *E.g.*, *Snyder*, 291 U.S. at 106-07. As the Second Circuit has noted, "[c]ommon sense dictates that substantial performance of [the Sixth Amendment's] terms is sufficient," *Clark*, 214 F.3d at 322 (quoting *People v. Mullen*, 44 N.Y.2d 1, 5-6 (N.Y. 1978)), in this regard. Thus, when there is no indication that a defendant "could have done anything had he been at the hearing nor would he have gained anything by attending," no due process violation results from the mere holding of a hearing in a defendant's absence. *Kentucky v. Stincer*, 482 U.S. 730, 747 (1987); *accord Cohen v. Senkowski*, 290 F.3d 485, 489

(2d Cir. 2002).

In the present case, Gaines accepted the same plea that he had accepted before, and received the same sentence that he had received before and which had been promised by trial judge. Since it is clear that Gaines' absence from the claimed sidebar did not affect, in any way, the ultimate outcome of the case, he has failed to establish that his presence at the claimed meeting would have been useful or otherwise beneficial to him. *E.g.*, *Dunn v. Senkowski*, No. 9:03-CV-0364 (NPM), 2007 WL 2287879, at *12 (N.D.N.Y. Aug. 7, 2007) (citing *Perez v. Greiner*, No. 00Civ.5504, 2005 WL 613183, at *5 (S.D.N.Y. Mar. 14, 2005); *Flores v. Keane*, 211 F. Supp.2d 426, 444-45 (S.D.N.Y.2001); *Lyon v. Senkowski*, 109 F. Supp.2d 125, 138 (W.D.N.Y. 2000) (Larimer, J.)). Thus, I recommend finding that Gaines' absence from that alleged conference was not constitutionally significant and does not warrant habeas relief..

**E.     Failure of trial judge to recuse himself**

Gaines asserts the following grounds require a finding that the trial judge erroneously failed to recuse himself: the judge made comments showing his bias, threatened a harsher sentence if petitioner were convicted after trial, and commented on every one of petitioner's convictions during the sentencing hearing. *See* Petition, ¶12(E) (Docket No. 1). Gaines' contention regarding the trial judge's alleged "threat" has not been substantiated and is without merit, as discussed above. As far as the comments showing bias, Gaines cites only the fact that the trial judge denied the recusal motion, saying, "have a nice day"; interrupted petitioner on several occasions; and stated, "there are no circumstances" in response to defense counsel's statement that petitioner would plead guilty "given the circumstances"; and allegedly vouched for the reliability of the pre-sentence report's investigation. On direct appeal, the Appellate

Division considered Gaines' recusal claim on the merits and denied it as follows:

> We further reject defendant's contention that the court abused its discretion in denying defendant's motion for recusal. Defendant does not allege a violation of [New York] Judiciary Law § 14,[4] nor has he shown that the court's alleged bias affected the outcome of the matter (*see People v Brown*, 270 AD2d 917, 917-918, *lv denied* 95 NY2d 851). Thus, "the determination of defendant's motion for recusal was a matter left to the court's conscience" (*id.* at 917). . . .

296 A.D.2d at 863, 744 N.Y.S.2d at 749. The Appellate Division's holding was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. The Supreme Court has held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. at 555 (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). Apart from a judge's surrounding comments or accompanying opinion, judicial rulings, in and of themselves, "cannot possibly show reliance upon an extrajudicial source" and "can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Id.* In almost every case, judicial rulings are rather "proper grounds for appeal, not for recusal." *Id.* Thus, Judge Harvey's ruling in which he declined to recuse himself does not come within hailing distance of judicial bias. *See Liteky*, 510 U.S. at 555.

With respect to the other remarks allegedly made by Judge Harvey and the fact that he interrupted Gaines while he was speaking,  the Supreme Court has held that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion

---

[4]     "A judge shall not sit as such in, or take any part in the decision of, an action, claim, matter, motion or proceeding to which he is a party, or in which he has been attorney or counsel, or in which he is interested, or if he is related by consanguinity or affinity to any party to the controversy within the sixth degree. . . ." N.Y. Judiciary Law § 14.

unless they display a deep-seated favoritism or antagonism that would make fair judgment

impossible." *Id.*  Thus, remarks by a judge that are "critical or disapproving of, or even hostile

to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.*

Such remarks "may do so if they reveal an opinion that derives from an extrajudicial source" and

"will do so if they reveal such a high degree of favoritism or antagonism as to make fair

judgment impossible." *Id.*  The Supreme Court has held that a judge's "expressions of

impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what

imperfect men and women, even after having been confirmed as federal judges, sometimes

display." *Id.* In short, the challenged comments and conduct do not evidence the extraordinarily

"high degree of favoritism . . . antagonism" to support a bias challenge. *Compare with Berger v.

United States*, 255 U.S. 22, 28 (1921) (In a World War I espionage case against

German-American defendants, the district judge commented, "One must have a very judicial

mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are

reeking with disloyalty.") (internal quotation marks omitted) (cited in *Liteky*, 510 U.S. at 556)

(stating that the judge's comments in *Berger*, 255 U.S. at 28, were an example of the type of

judicial comments that revealed such a high degree antagonism as to make fair judgment

impossible).  Accordingly, the Court recommends that Gaines' claim that the trial judge

erroneously failed to recuse himself be dismissed.

### F.    Insufficiency of the plea allocution

Gaines contends that his plea allocution was "insufficient as a matter of law." Petition,

¶12(F) (Docket No. 1). According to Gaines, Judge Harvey "inaccurately accused" him of

having his co-defendant forge the name of the woman whose stolen credit cards he used, even

though there was "nothing in the record to indicate that petitioner forced [his co-defendant] to do anything, or that petitioner even understood his role in the second forgery under the concept of aiding and abetting." *Id.* The Appellate Division rejected this claim as follows on direct appeal:

> Defendant failed to move to withdraw his plea or to vacate the judgment of conviction and thus failed to preserve for our review his contention that the plea allocution with respect to count four of the indictment was factually insufficient (*see People v Lopez*, 71 NY2d 662, 665). In any event, that contention lacks merit.
> . . .

*Gaines*, 296 A.D.2d at 863.  Respondent asserts that it was not improper for Gaines to plead guilty to the forgery charges under a theory of accomplice liability even though he was not charged under P.L. § 20.00 in the indictment. Resp't Mem. at 19 (Docket No. 5) (citing *People v. Bell*, 162 A.D.2d 989, 990 (App. Div. 4th Dept. 1990); *People v. Kimbrough*, 155 A.D.2d 935 (App. Div. 4th Dept. 1989); *People v. Duncan*, 46 N.Y.2d 74, 79-80 (N.Y. 1978)). Under P.L. § 20.00, a person other than the principal actor may nonetheless be criminally liable as though he were the principal when, "acting with the mental culpability required for the commission [of the crime], he solicits, requests, commands, importunes, or intentionally aids [the principal] to engage in such conduct." N.Y. PENAL LAW § 20.00. In New York, the "fact that an indictment accuses a defendant as a principal does not preclude his conviction as an accessory and a [jury] charge based on accessorial conduct is not grounds for reversal." *People v. Kimbrough*, 155 A.D.2d 935, 547 N.Y.S.2d at 756; *see also*, *e.g.*, *People v. McEachin*, 188 A.D.2d 433, 591 N.Y.S.2d 1023, 1024 (App. Div. 1st Dept. 1992) (same); *People v. Duncan* , 46 N.Y.2d 74, 79-80 (New York law makes "no distinction between liability as a principal and criminal culpability as an accessory and the status for which the defendant is convicted

has no bearing upon the theory of the prosecution."), *cert. denied*, 442 U.S. 910 (1979).

Therefore, even if the prosecution's original theory was that defendant was a principal,

"there is no infirmity in defendant's conviction as an accomplice." *People v. Doles*, 165

A.D.2d 689, 564 N.Y.S.2d 15, 16 (App. Div. 1st Dept. 1990); *see also*, *e.g.*, *People v.*

*Liccione*, 63 A.D.2d 305, 407 N.Y.S.2d 753, 756-57 (App. Div. 4th Dept. 1978), *aff'd*, 50

N.Y.2d 850,(N.Y. 1980). *Accord*, *e.g.*, *Mercado v. Stinson*, 37 F. Supp.2d 267, 279

(S.D.N.Y. 1999). Gaines' argument thus rests on a distinction that does not exist under

New York state law. *Chandler v. Moscicki*, 253 F. Supp.2d 478, 487 (W.D.N.Y. 2003)

(Foschio, M.J.) (citing N.Y. PENAL LAW § 20.00). Thus, "[a] state indictment need not

allege whether a defendant is charged as a principal or an accomplice , and the distinction

generally is considered 'academic.'" *Moscicki*, 37 F. Supp.2d at 487 (quoting *People v.*

*Guidice*, 83 N.Y.2d 630 (N.Y.1994)).

     Gaines has not shown a violation of New York state law and, more important for

this Court's review, he has not demonstrated how his federal constitutional rights were

violated.  *See Mercado*, 37 F. Supp.2d at 279 (denying habeas relief based on claim that

petitioner he was denied his right to fair notice of the charges pending against him and

the right to be prosecuted only by grand jury indictment when, in response to a jury

question, the trial judge allowed the jury to convict petitioner even if it concluded that he

did not enter the store) (citing *Brown v. Collins*, 937 F.2d 175, 182 (5th Cir.1991) ("[W]e

consistently have held in the context of federal trials that 'one who has been indicted as a

principal may, on proper instructions, be convicted on evidence showing only that he

aided and abetted the commission of the offense'") (quotation omitted); *Tapia v. Tansy*,

-25-

926 F.2d 1554, 1560 (10th Cir. 1991) ("The 'sufficiency of an indictment or information

is primarily a question of state law.' . . . Under [state] law, [defendant] had sufficient

notice to be convicted on the accessory theory, even though the information did not

charge him as an accessory. . . . [T]rial counsel's failure to argue lack of notice or to

request a continuance to meet the allegedly new theory of liability at the time of the

instruction's submission suggests that he was not surprised by the instruction . . .")

(quotation omitted; alteration in original); *Moscicki*, 253 F. Supp.2d at 487-88 ("[T]he

record does not support [petitioner']s claim that his rights under the Due Process Clause

were violated because he was not given adequate notice of his potential liability as an

accomplice under the Indictment and a reasonable opportunity to prepare a defense

against the charges. The trial court correctly found that the theory of prosecution did not

unconstitutionally change the basis for [petitioner]'s culpability as an accomplice rather

than as a principal because while [petitioner] was formally charged by the Indictment as a

principal in having committed the burglary, he was notified as early as the proceedings in

Buffalo City Court that he had acted with an accomplice, and faced criminal liability on

that basis as well. . . ."). Here, as respondent points out, the prosecutor explicitly stated

on the record that Gaines was being charged as an accomplice in connection with one of

the forgery charges. Resp't Ex. G at 17. Moreover, Gaines had already pled guilty to this

charge as an accomplice during his *first* plea bargain the previous year, at which time he

was informed that he was being charged as an accomplice. Resp't Ex. C at 14. This claim

is wholly without factual or legal basis and should be dismissed.

**V.      Conclusion**

For all of the foregoing reasons, I recommend that Eddie Gaines' petition for a writ of habeas corpus be denied and dismissed. I further recommend finding that Gaines has failed to demonstrate the  a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). Therefore, I recommend that no certificate of appealability should issue with respect to any of Gaines' claims.

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: October 6, 2008
          Buffalo, New York.

-27-

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and

Recommendation to petitioner and respondent.


**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: October <u>6</u>, 2008.
            Buffalo, New York

.